IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CV-191-KS

| | | |
|---|---|---|
| MARILYN BELLAMY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Marilyn Bellamy ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for disability and disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. On July 12, 2018, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #16], denies Defendant's Motion for Judgment on the Pleadings [DE #20], and remands the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and DIB on July 22, 2013, with an alleged onset date of November 8, 2012. (R. 88, 97.) Plaintiff later amended the onset date to March 15, 2013, Plaintiff's fiftieth birthdate. (R. 18, 39.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 87–96, 99–113, 128.) A hearing was held on September 15, 2016, before Administrative Law Judge ("ALJ") Tammy Georgian, who issued an unfavorable ruling on December 15, 2016. (R. 18–30, 36–66.) The Appeals Council denied Plaintiff's request for review on September 14, 2017. (R. 1–5.) At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On October 9, 2017, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389,

401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. "The

3

Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since March 15, 2013, the amended alleged onset date. (R. 20.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative joint disease of the shoulder status post arthroscopy, and cervical degenerative disc disease." (*Id.*) The ALJ found Plaintiff's hypertension, hypothyroidism, and obesity to be non-severe impairments and Plaintiff's carpal tunnel syndrome and history of treatment for her right finger fracture insufficient to constitute medically determinable impairments. (R. 20–22.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 22.) The ALJ analyzed Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the residual functional capacity "to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c)." (R. 22.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 24.) At step four, the ALJ concluded Plaintiff is able to perform her past relevant work as "a pork skinner and dual hand packager."[1] (R. 28.) Alternatively, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform and that application of Medical-Vocational Rule 203.22 directs "a finding of 'not disabled.'" (R. 29.)

## IV. Plaintiff's Argument

Plaintiff contends the ALJ erred by finding Plaintiff's degenerative joint disease to be severe without including corresponding limitations in the RFC, particularly in light of contrary opinion evidence. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #17] at 5). The Commissioner contends that the ALJ's decision correctly applied relevant law and regulations and is supported by substantial evidence. For the

---

[1] The transcript of the VE's testimony and the ALJ's decision both reference DOT# 920.687-018 for Plaintiff's prior work as a hand packager in a pork processing plant. (R. 28.) However, that appears to be in error as DOT# 920.687-018 is the occupational code for a laundry/garment bagger or packager. The correct DOT code appears to be DOT# 920.587-018, which corresponds to industrial hand packagers, including hand packagers (meat products).

reasons discussed below, the undersigned disagrees with the Commissioner and, therefore, orders remand.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7. If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his

6

conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Simply put, this means an ALJ must "[s]how [her] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295).

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3 (July 2, 1996).[2] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c); SSR 96–8p, 1996 WL 374184, at *7. Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it fails to include any limitations for reaching caused by her

---

[2] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

7

degenerative disc disease, which the ALJ found to be severe. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 6.) Specifically, Plaintiff asserts the ALJ erred by: (1) concluding that Dr. Ferris Locklear's "muscoskeletal examination revealed no abnormalities" while failing to discuss Plaintiff's decreased shoulder range of motion (*id.* at 6.); and (2) discounting the opinion of Dr. Frank Virgili, a state agency medical consultant, who limited Plaintiff to light work upon finding that Plaintiff's severe shoulder impairment caused "limitations in bilateral pushing, pulling, and reaching" (*id.*).

The court finds that the ALJ's findings are not supported by substantial evidence in the record. Although the ALJ concluded that an "ongoing restriction against repetitive overhead use of the left upper extremity is not supported by the evidence of record, including the claimant's complaints and subjective allegations," the record shows otherwise. (R. 25.)

The record in this case reflects that Dr. Peter G. Dalldorf, a board certified orthopedist, performed arthroscopic surgery on Plaintiff's left shoulder in November 2012. Following surgery, Plaintiff was referred for physical therapy, where she was assessed with a decreased range of motion, decreased left shoulder strength, and increased pain with overhead and behind back movement. (R. 471.) Plaintiff received physical therapy at twenty-two sessions from November 2012 to February 2013. Records from these treatment sessions show that Plaintiff continued to experience pain with overhead reaching although her functional range of motion and strength had improved. (R. 446, 450, 453, 461, 463, 467, 470, 471–72.) Plaintiff was released from medical care on March 11, 2013, following the physical therapist's

8

determination that she had reached maximal therapeutic potential. (R. 446, 493.) Plaintiff's orthopedic surgeon, Dr. Dalldorf, "cleared [her] for most jobs" but cautioned that she "should avoid repetitive overhead use with [the left] arm." (R. 493.) He also rated Plaintiff with a 15% permanent partial impairment of the arm. (R. 493).

In July 2014, Dr. Ferris Locklear conducted a consultative physical examination of Plaintiff. Dr. Locklear opined that Plaintiff was able to dress and undress, button clothes, tie shoes, dial a telephone, hear, speak, and travel. (R. 26, 511–12.) While he found no "significant range of motion abnormality," Dr. Locklear did note limitations in Plaintiff's ability to reach overhead and decreased ranges of motion in her thoracolumbar spine, shoulder, hip, and knee. (R. 507, 511.) The ALJ purportedly gave Dr. Locklear's opinion great weight, finding that his opinion was based upon an examination of Plaintiff and was consistent with the record as a whole. (R. 26.) However, the ALJ found that Dr. Locklear's "[m]uscoloskeletal examination revealed no abnormalities" (R. 26), which is contrary to Dr. Locklear's examination report.

The only other medical opinion regarding Plaintiff's ability to reach came from Dr. Frank Virgili, a state agency consultant. In September 2014, Dr. Virgili reviewed Plaintiff's medical records and restricted Plaintiff to lifting and carrying up to twenty pounds occasionally and ten pounds frequently, and standing and walking six hours per workday. He further imposed limitations with regard to Plaintiff's use of her upper extremities. Specifically, he opined that Plaintiff should be limited to frequent, not continuous, pushing/pulling and reaching bilaterally due to her history of

9

shoulder arthroscopy, as well as frequent handling and fingering due to her carpal tunnel syndrome. (R. 109-10.) Despite the consistency among the medical opinions with regard to Plaintiff's reaching limitations, the ALJ found Dr. Virgili's opinion "inconsistent with the record as a whole, which shows . . . *no limitations to shoulder, hand, or arm range of motion*" and accorded his opinion little weight. (R. 28 (emphasis added).)

The ALJ never explained how she concluded—based on the evidence—that Plaintiff could actually perform the tasks required by "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours in the absence of a reaching limitation. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). While the ALJ found Plaintiff's degenerative joint disease of the shoulder status post arthroscopy and cervical degenerative disc disease to be severe, she failed to include any RFC restrictions addressing Plaintiff's functional limitations caused by these impairments. Instead, the ALJ disregarded all medical opinions regarding Plaintiff's functional limitations in reaching, finding that the opinions were not consistent with the record as a whole. The ALJ's finding in this regard is not supported by substantial evidence of record.

The fact that the ALJ erred in this aspect of her decision does not conclude the court's inquiry because the error must be harmful to warrant remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009); *Garner v. Astrue*, 436 F. App'x. 224, 225 n* (4th Cir. 2011). Here, the ALJ's error is not harmless and thus requires remand. Proper analysis of Plaintiff's overheard reaching limitations could reasonably be

10

expected to have produced a different outcome in Plaintiff's RFC determination and, potentially, the ultimate issue of disability. *See Suggs v. Astrue*, No. 4:11-CV-128-FL, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013) ("Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." (quoting *Christian v. Comm'r of Soc. Sec.*, No. 2:08-CV-47, 2009 WL 2767649, at *6 (W.D. Va. Aug. 25, 2009))).

In this case, the ALJ determined that Plaintiff is able to perform her past relevant work as "a pork skinner and dual hand packager." (R. 28.) Both of these occupations are classified at the medium exertional level. The ALJ made an alternative finding that application of the grids would direct "a finding of 'not disabled'" given Plaintiff's ability to perform the full level of medium work. (R. 29.) The VE testified that any limitations with regard to reaching would likely preclude employment at the medium exertional level. (R. 58-59.) Although the ALJ questioned the VE about the light exertional level, the evidence is insufficient to determine whether the outcome would have been different had a reaching limitation been imposed. *See Craig*, 76 F.3d at 589 (cautioning courts against re-weighing conflicting evidence, making credibility determinations, and substituting their judgment for that of the Commissioner). Accordingly, the court remands the matter to the Commissioner for further proceedings related to the assessment of Plaintiff's residual functional capacity.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #16] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #20] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 18th day of March 2019.

KIMBERLY A. SWANK
United States Magistrate Judge